O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DEJON CHRISTOPHER
BARRETT,

              Plaintiff,

              v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

Case No. CV 14-8838 KES

MEMORANDUM OPINION AND
ORDER

    Plaintiff Dejon Christopher Barrett appeals the final decision of the
Administrative Law Judge ("ALJ") denying his application for Title XVI
benefits.  Administrative Record ("AR") 19-32.  For the reasons stated below,
the Commissioner's decision is AFFIRMED.

## I.

## BACKGROUND

    On May 17, 2012, Plaintiff filed applications for Supplemental Security
Income ("SSI") alleging a disability onset date of January 1, 2002.  AR 22.  In
2002 when he was 27 years old, Plaintiff fractured his left tibia and fibula in a

motorcycle accident.  AR 25, 28, 241.  After surgery, the fracture did not heal well, such that Plaintiff's left leg is now shorter than his right.  Id.  This causes him to suffer from back pain and he walks with a limp, sometimes using a cane.  AR 26, 27, 201, 213.

While Plaintiff contends he is too disabled to work, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work.  AR 25.  The ALJ found Plaintiff can lift and/or carry up to 10 pounds occasionally, with small objects frequently.  Id.  He can stand and walk two out of eight hours, and he can sit six out of eight hours, with normal breaks.  Id.  He needs a cane to ambulate and can push and pull without significant limitation.  Id.  He can bend, stoop, crouch, and crawl occasionally. Id.

With this RFC, the vocational expert ("VE") testified that Plaintiff could not perform his past relevant work as a construction worker II and security guard.  AR 27-28, 52.  He could, however, perform the jobs of a (1) sorter, DOT 521.687-086, sedentary, SVP 2, (2) packer, DOT 669.687-014,[1] sedentary, SVP 2, and (3) inspector, DOT 669.687-014, sedentary, SVP 2.  AR 28, 54.

/ / /

/ / /

/ / /

/ / /

---

[1] The VE was off by one digit when he stated that the DOT code for a packer was DOT 559.687–014 rather than DOT 559.687–074.  The mistake was akin to a typographical error, and does not affect the Court's analysis. Morales v. Astrue, 300 F. App'x 457, 458 (9th Cir. 2008) (unpub.) (ALJ's citation of wrong DOT provision for a job was harmless error) citing Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

## II.

## ISSUES PRESENTED

Plaintiff's appeal from the ALJ's unfavorable decision presents the following three issues:

(1) Whether the ALJ's Step three findings are supported by substantial evidence and are free of legal error.

(2) Whether the ALJ supported his adverse credibility assessment with clear and convincing reasons.

(3) Whether the ALJ's residual functional capacity assessment is supported by substantial evidence.

See Joint Stipulation ("JS") at 3.

## III.

## DISCUSSION

**A.    Issue One:  Plaintiff does not meet Listing 1.06.**

Plaintiff contends that the ALJ erred in failing to make findings supported by substantial evidence that specifically address whether Plaintiff meets Listing 1.06.  JS at 3.

Respondent contends that (1) the ALJ's statements at AR 25 that he "considered all sections of the Listing of Impairments, including, in particular, those sections of the Listing pertaining to musculoskeletal impairments" which include no. 1.06 are sufficient to satisfy the Step 3 analysis, and (2) even if more specific findings were required, the omission is "harmless error" because Plaintiff does not meet Listing 1.06.  JS at 7.

Listing 1.06 defines as a presumptive disability any fracture of the tibia with:

> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to

occur within 12 months of onset.

20 C.F.R., pt. 404, subpt. P, app. 1 § 1.06.

Section 1.00B2b, in turn, specifies that "inability to ambulate effectively" means "having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  Section 1.00B2b provides the following examples of ineffective ambulation:

> [T]he inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R., pt. 404, subpt. P, app. 1, § 1.00B(2)(b)(1).

Here, Plaintiff's own hearing testimony establishes that he can walk using one cane held in one hand.  AR 50.  Plaintiff also informed Dr. Sargeant that he occasionally used a cane, especially when walking "long distances." AR 199.  There is no evidence that Plaintiff ever required a walker, two canes, crutches, or any other assistive device that required the use of both his arms. As a result, he does not have the "ineffective ambulation" required to meet Listing 1.06.  Huizar v. Astrue, No. 11-cv-7246-PLA, 2012 WL 3631526, at *7 (C.D. Cal. Aug. 23, 2012) (despite her use of a cane, claimant did not have the inability to ambulate effectively required to meet a Listing because there was no evidence that she required two canes "or any other assistive device that limits the functioning of both upper extremities").

Nor is Plaintiff's condition "equivalent" to Listing 1.06.  Plaintiff admits he could "walk two to three blocks" with the cane.  JS at 11, citing AR 50-51. Plaintiff also relies on the opinion of James Brannon, M.D., who opined that Plaintiff could walk 4 hours "total at one time" during the workday.  AR 238.

4

The VE identified jobs that allowed for Plaintiff's use of cane (AR 54), which further shows that such a limitation is not listing-level, even under an equivalency theory.  Tommasetti v. Astrue, 533 F.3d 1035, 1038, 1042 (9th Cir. 2008) (affirming ALJ's determination that plaintiff was "not disabled" based on his ability to perform sedentary work, even though plaintiff testified that he intermittently used a cane).

**B.   Issue Two:  The ALJ properly supported his adverse credibility assessment of Plaintiff's testimony's concerning subjective symptoms.**

Plaintiff contends the ALJ erred by discrediting his testimony at the hearing concerning three subjective complaints so great as to prevent Plaintiff from performing even sedentary work:  (1) pain, (2) swelling, and (3) dizziness/fatigue. JS at 13.

As a rule, an ALJ can reject a claimant's subjective complaints, such as testimony about the severity of symptoms, by "expressing clear and convincing reasons for doing so." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines a claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  The ALJ did so here as to each of Plaintiff's subjective complaints.

(1)   Pain

At the 2013 hearing, Plaintiff testified that he suffers from back pain, such that he can only sit for 30 minutes to an hour before he needs to get up and move around.  AR 49-50.  He takes Vicodin and medical marijuana.  AR 47.  He testified he takes Vicodin 3 or 4 times a week.  AR 48.  Treating records from T.H.E. Clinic dated June 2012, however, say Plaintiff "was alternating between Tylenol #3 and Vicodin but hasn't taken any pain meds since 2006." AR 191.  Plaintiff was prescribed Vicodin again in July 2012

1    when Plaintiff suffered a mild head injury during a car accident.  AR 25, 252.

2    April 18, 2013 records from Alpine Medical Group say Plaintiff reports using

3    "medical marijuana once or twice per day."  AR 214.

4         The ALJ gave "limited weight" to Plaintiff's subjective complaints of

5    disabling pain.  AR 27.  The ALJ found that Plaintiff's back pain was

6    sufficiently severe to "warrant the exertional limitations" in the RFC, but was

7    not so severe as to render Plaintiff unable to perform even sedentary jobs.  AR

8    27.

9         If the ALJ finds testimony as to the severity of a claimant's pain and

10   impairments is unreliable, "the ALJ must make a credibility determination

11   with findings sufficiently specific to permit the court to conclude that the ALJ

12   did not arbitrarily discredit claimant's testimony."  Thomas v. Barnhart, 278

13   F.3d 947, 958-59 (9th Cir. 2002).  In doing so, the ALJ may consider

14   testimony from physicians "concerning the nature, severity, and effect of the

15   symptoms of which [the claimant] complains."  Id.  If the ALJ's credibility

16   finding is supported by substantial evidence in the record, courts may not

17   engage in second-guessing.  Id.

18        Here, the ALJ cited reports from (1) internist Ulin Sargeant, M.D., who

19   performed a consultative examination on September 28, 2012 and

20   (2) orthopedic surgeon Jonathan Kurland, M.D., who performed a

21   consultative examination in April 2013.  AR 26, citing AR 198-202, 213-218.

22   Both doctors took into account Plaintiff's subjective complaints of pain, but

23   both found that he had a functional capacity consistent with sedentary work.

24   AR 202 (finding Plaintiff can walk or stand 4 hours of an 8-hour day, and sit 6

25   hours of an 8-hour day), AR 218 (finding Plaintiff can walk or stand for 2

26   hours of an 8-hour day and can sit for 6-8 hours of an 8-hour day).  As a result,

27   the ALJ's credibility finding (discounting Plaintiff's testimony that he was in

28   too much pain to perform even sedentary work) is supported by substantial

evidence in the record.

(2)   Swelling

Plaintiff testified that his left leg "swells real bad" and is a reason he cannot work.  AR 45.  Plaintiff testified that he experiences daily swelling that requires him to elevate his leg "for many hours during the day."  AR 47-48.

The ALJ could properly reject Plaintiff's testimony that his leg swelling is so severe as to prevent him from performing even sedentary work, because Plaintiff's testimony was inconsistent with medical evidence in the record. First, of all the doctors who examined Plaintiff, none reported serious evidence of swelling/edema.  E.g., AR 200 ("There are no ... swelling"); AR 252 ("No edema noted").  The medical reports show a single instance of swelling with only 1+ swelling in his left leg.  AR 199.

Second, all three of the doctors who provided an opinion of Plaintiff's capabilities saw no reason to include any limitations regarding a need to lay down or to elevate his leg to prevent swelling, and all of them opined that he was capable of walking at least 2 hours in an eight-hour workday.  AR 64-65, 198-202, 213-18, 238.  See, Denham v. Astrue, 494 F. App'x 813, 815 (9th Cir. 2012) (unpub.) (ALJ reasonably found claimant's statements "as to the nature and severity of her physical limitations" inconsistent with "evidence offered by physicians that she had the [RFC] to perform certain light and sedentary work").  Accordingly, the ALJ's credibility determination was again supported by substantial evidence in the record.

(3)   Dizziness/Fatigue

Plaintiff testified that he becomes fatigued with even minimal exertion such as walking or climbing stairs to the apartment where he lives.  AR 51, 155.  Plaintiff completed a questionnaire saying he needs rest breaks for 15 minutes of every hour.  AR 155.

The ALJ did not credit Plaintiff's claims of disabling fatigue for at least

1   two valid reasons.  First, he noted Plaintiff "has never alleged unusual fatigue

2   to any treating or examining physician."  AR 27.  This is an appropriate

3   consideration.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)

4   (claimant's failure to report symptoms to treating sources undermined his

5   credibility); 20 C.F.R. § 416.929(c)(4).

6        Second, the ALJ cited the fact that the medical evidence showed "no

7   medically determinable impairment that could reasonably cause" the symptom

8   of extreme fatigue.  AR 27.  Rollins v. Massanari, 261 F.3d 853, 856-57 (9th

9   Cir. 2001) (lack of objective evidence, when combined with other factors, is a

10  valid reason for rejecting a claimant's testimony).

11       Plaintiff now points to an "abnormal EKG" in April 2012 as a medical

12  impairment that could cause extreme fatigue.  JS at 12, citing AR 282.

13  Plaintiff's April 2012 medical records relate to his being "treated in prison"

14  following being "arrested for DUI."  AR 279.  The report says "Probable

15  Normal Variant/Summary:  Borderline ECG."  AR 283.  This evidence was

16  never submitted to the ALJ, but instead was submitted to the Appeals Council.

17  JS at 15.

18       Social Security Administration regulations "permit claimants to submit

19  new and material evidence to the Appeals Council and require the Council to

20  consider that evidence in determining whether to review the ALJ's decision, so

21  long as the evidence relates to the period on or before the ALJ's decision."

22  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012);

23  see also 20 C.F.R. §§ 404.970(b), 416.1470(b).  "[W]hen the Appeals Council

24  considers new evidence in deciding whether to review a decision of the ALJ,

25  that evidence becomes part of the administrative record, which the district

26  court must consider when reviewing the Commissioner's final decision for

27  substantial evidence."  Brewes, 682 F.3d at 1163; accord Taylor v. Comm'r of

28  Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011); see also Borrelli v.

Comm'r of Soc. Sec., 570 F. App'x 651, 2014 WL 1492736, at *1 (Apr. 17, 2014) (remand necessary when "reasonable possibility" exists that "the new evidence might change the outcome of the administrative hearing").

Plaintiff's new EKG evidence does not meet this standard.  Plaintiff does not explain why a "borderline EKG" in April 2012 would not more likely be attributable to Plaintiff's being in a stressful situation at the time of the test (*i.e.*, arrested and in prison) or Plaintiff's poorly controlled hypertension (which was considered by the ALJ) rather than Plaintiff's suffering from a heart condition causing extreme fatigue.  Plaintiff produced medical records from June 2012 reporting normal heart sounds and rhythm.  AR 195-196.  Moreover, as noted above, the ALJ could appropriately discount Plaintiff's testimony due to his having never complained of unusual fatigue to any treating or examining physician – regardless of the existence of a medical impairment that might cause fatigue.  Accordingly, the Court declines to find that Plaintiff's new evidence justifies a remand.

As for dizziness, Plaintiff complained that "uncontrolled hypertension has led to dizziness and fainting."  AR 155.  The ALJ duly noted that Plaintiff's dizziness occurred during periods of non-compliance with treatment for hypertension.  When he was compliant (*i.e.*, taking his medication as prescribed), his symptoms remitted.  AR at 27, citing AR 190 (describing Plaintiff's failure to take blood pressure medication as prescribed, resulting in dizziness).  A condition with symptoms that can be controlled by following a prescribed course of treatment is not a disability.  20 CFR § 404.1530(b) and § 416.930(b) ("If you do not follow the prescribed treatment without good reason, we will not find you disabled."); Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits").

**C.**   <u>**Issue Three:  The ALJ's residual functional capacity assessment is**</u>
<u>**supported by substantial evidence.**</u>

Plaintiff mounts three challenges to the RFC.  First, Plaintiff contends that because the ALJ improperly discredited his subjective complaints, the RFC failed to take into account limitations caused by those complaints, such as Plaintiff's need to elevate his leg for hours each day.  JS at 18.  Because the Court finds (for the reasons explained above) that the ALJ's decision to discredit Plaintiff's subjective complaints was supported by substantial evidence, the Court finds no error in the ALJ's RFC analysis.  <u>Bayliss v.</u> <u>Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005)  (because the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper").

Second, Plaintiff contends that the ALJ erred in giving only "limited weight" to the opinions of Dr. Brannon, a physician who completed a 1-page "physical capacities evaluation" checklist.  JS at 18, citing AR 27.  Dr. Brannon determined that Plaintiff has additional functional limitations not cited by the other doctors, such as limitations on pushing, pulling, reaching, crawling, and exposure to heights.  AR 238.

The ALJ gave Dr. Brannon's opinion "limited weight" because (1) "it is not supported by any record of treatment or examination" and (2) it is "inconsistent with the other medical evidence of record."  AR 27.  Both reasons are appropriate considerations.  <u>Chaudhry v. Astrue</u>, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")

As an example of inconsistency, the ALJ noted that while Dr. Brannon

opined Plaintiff cannot perform "pushing or pulling of arm controls," other doctors documented Plaintiff's "good upper-body strength."  AR 27.  This finding of inconsistency is supported by substantial evidence.  AR 202 (Dr. Sargeant opined Plaintiff can "push and pull frequently" and suffers "no hand use impairment"); AR 218 (Dr. Kurland opined "pushing and pulling should have no limitation" and "no limits" for hand controls).  Dr. Brannon opined that Plaintiff could not lift more than five pounds (AR 238), but the record shows that Plaintiff had normal strength in his arms.  AR 201, 217.

Third, Plaintiff contends the ALJ erred in not specifying that Plaintiff needs a cane to ambulate as part of the RFC.  JS at 18.  This is harmless error.  The ALJ specifically asked the VE to consider this limitation when posing hypotheticals to determine what kinds of jobs Plaintiff might be capable of performing.  AR 53.  Moreover, there is no conflict between the use of a cane and the requirements of the identified jobs as described in the Dictionary of Occupational Titles (DOT), because those jobs do not require the continual use of both hands.[2]  Courts in this district have found that a limitation to the use of one hand does not conflict with the DOT where the DOT description does not explicitly require the use of both hands.  Suarez v. Astrue, 11-cv-1940-

_____

[2] To the extent the DOT defines the packer job as requiring light exertion and is inconsistent with the RFC of sedentary work, this, too, is harmless error.  The other sorter and inspector jobs identified are sedentary and independently exist in significant numbers – 26,000 jobs nationally and 1,090 locally per AR 54.  Gutierrez v. Colvin, 740 F.3d 519, 527-29 (9th Cir. 2014) (either 2,500 jobs in the State of California or 25,000 jobs nationally is a significant number), citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (1,000 to 1,500 jobs in the local area alone was significant); Thomas v. Comm'r of Soc. Sec., 480 Fed. App'x 462, 464 (9th Cir. 2012) (unpub.) ("Even if [claimant] could not perform the jobs of appointment clerk or assembler, she could perform the job of housekeeper cleaner, which existed in significant numbers in the national economy").

SP, 2012 WL 4848732, at *4 (C.D. Cal., Oct. 11, 2012) (limitation on the right dominant arm did not conflict with reaching requirement in job's description); McConnell v. Astrue, No. 08-cv-667, 2010 WL 1946728, at*6-*7 (C.D. Cal. 2010) (upholding ALJ's Step Five determination that plaintiff, who could use one arm without significant limitations, could perform jobs that required frequent or occasional reaching, handling and/or fingering, and there was no bilateral requirement).

### CONCLUSION

Based on the foregoing, **IT IS ORDERED THAT** judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated:  October 01, 2015

KAREN E. SCOTT
United States Magistrate Judge

12